## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LARRY WESLEY SANDERS III,

                        Plaintiff,

        -vs-

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; and TRANS UNION,
LLC,

                     Defendants.

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Larry Wesley Sanders III ("Plaintiff" or "Mr. Sanders"), brings this Complaint against Equifax Information Services LLC ("Defendant Equifax" or "Equifax"), Experian Information Solutions, Inc. ("Defendant Experian" or "Experian"), and Trans Union, LLC ("Defendant Trans Union" or "Trans Union") (collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorneys' fees, for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, arising out of Defendants' mixing and merging of Plaintiff's credit files, credit reports, credit history, and personal identification information with that of his twin brother, a separate consumer with a different middle name, Social Security number, and address history.

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it

1

be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     The CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.     "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ), 2011 E.S. Dist. LEXIS 28896, *1, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.     Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system,

and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.      Since 1970, when Congress enacted the FCRA, as amended, 15 U.S.C.§ 1681 *et seq.*, federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.      "Mixed files" create a false description and representation of a consumer's credit history.

9.      A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

3

11.     Mixed files are not a new phenomenon. Equifax, Experian, and Trans Union have been put on notice of the existence of mixed files and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     All three credit bureaus, Equifax, Experian, and Trans Union have been the subject of numerous state attorney general actions relating to their mixed file problems.

13.     In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the credit reporting practices of consumer reporting agencies Equifax, Experian, and Trans Union, including the incidence of mixed files. Thirty-one (31) states participated in the enforcement action, which resulted in a $6,000,000 settlement with Equifax, Experian, and Trans Union.[1]  Pursuant to the settlement, the three CRAs promised, among other things, "to implement an escalated process for handling complicated disputes – such as those involving . . . mixed files — where one consumer's information is mixed with another's."[2]

14.     In another example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files. *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.[3]*

15.     Notwithstanding Equifax, Experian, and Trans Union's notice and being subject  to

---

[1] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies (last visited August 25, 2025).
[2] *Id.*
[3] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces- groundbreaking-consumer-protection-settlement-three (Last visited August 25, 2025);
https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed% 203.8.15.pdf (Last visited August 25, 2025).

repeated enforcement actions, mixed files persist despite consumers' unique personal identifying information, such as Social Security numbers, names, dates of birth, and addresses.

16.     Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both.

17.     Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

18.     Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

19.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632- JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

23.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

24.     No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes

a consumer's file with another consumer.

25.    Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

26.    Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

27.    Plaintiff Larry Wesley Sanders III ("Plaintiff") is a natural person who, at all times material hereto, resided in the City of Wixom, County of Oakland, State of Michigan, and is a "consumer" as defined by the FCRA at 15 U.S.C. § 1681a(c).

28.    Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

29.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

30.    Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

31.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and

disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

32.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

33.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.§ 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

36.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect consumers' rights to fairness and accuracy in the reporting of their credit information.

37.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information….." 15 U.S.C. § 1681(b).

38.     The FCRA further requires that when preparing consumer reports, a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

39.     The Consumer Financial Protection Bureau has long recognized that "[a]s the range and frequency of decisions that rely on credit reports have increased, so has the importance of assuring the accuracy of these reports."[4]

**The Credit Bureaus' Processing of Credit Information**

40.     Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

41.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

42.     Equifax, Experian, and Trans Union collect information from thousands of furnishers.

43.     The process by which Equifax, Experian, and Trans Union receive, sort, and store information is largely electronic.

44.     Furnishers report credit information to Equifax, Experian, and Trans Union using coded tapes that are transmitted to Equifax, Experian, and Trans Union on a monthly basis through software known as Metro 2.

---

[4] Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, at 5 (December 2012).

45.     Equifax, Experian, and Trans Union take the credit information reported by furnishers and create consumer credit files.

46.     Equifax, Experian, and Trans Union maintain credit files on more than 200 million consumers.

47.     Credit files are updated electronically by Equifax, Experian, and Trans Union based on furnishers' reporting of new information regarding their reported accounts (sometimes referred to within the industry as "tradelines").

## The Credit Bureaus' Mixed File Problem

48.     Equifax, Experian, and Trans Union know that different consumers can have similar names.

49.     Equifax, Experian, and Trans Union know that different consumers can have similar Social Security numbers.

50.     Equifax, Experian, and Trans Union know that different consumers with similar names can also have similar Social Security numbers.

51.     Equifax, Experian, and Trans Union know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

52.     Equifax, Experian, and Trans Union match tradelines and public records to consumer credit files by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

53.     Equifax, Experian, and Trans Union accomplish this matching of credit information to consumer credit files using certain matching algorithms or database rules.

54.     Sometimes Equifax, Experian, and Trans Union's matching algorithms match

information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

55.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

56.     Despite Equifax, Experian, and Trans Union's long-standing and specific knowledge of the mixed file problem, Plaintiff's credit reports were still generated by Equifax, Experian, and Trans Union containing information belonging to another consumer.

57.     A mixed or merged credit file is the result of Equifax, Experian, and Trans Union inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

58.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Equifax, Experian, and Trans Union to match personal identifying information and credit information, including public record information, to a particular consumer's credit file or files.

59.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Equifax, Experian, and Trans Union.

60.     These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

61.     Therefore, a mixed credit file and/or report is sometimes the result of the mixing of

11

two or more consumer credit files belonging to different consumers into one credit file and report.

**Plaintiff's Credit Application for an American Express Delta SkyMiles Credit Card in May 2023 is Denied Due to Defendants Experian and Trans Union's Inaccurate Credit Reporting**

62.     In or about late May 2023, Plaintiff was booking a flight with Delta Air Lines from Michigan to Colorado and sought to open an American Express Delta SkyMiles Credit Card in order to put the cost of his flight on the credit card and to begin earning SkyMiles and other related perks through Delta Air Lines.

63.     On May 31, 2023, Plaintiff submitted a credit application with American Express for an American Express Delta SkyMiles Credit Card.

64.     As part of Plaintiff's credit application, he submitted all of his personal identification information and authorized American Express to access his credit reports.

65.     At the time of Plaintiff's May 31, 2023, credit card application with American Express, Defendants Experian and Trans Union published credit reports regarding Plaintiff to American Express that were mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Larry Tyler Sanders ("Tyler Sanders").

66.     Plaintiff's credit card application with American Express was denied as a direct result of the inaccurate information contained within his Experian and Trans Union credit reports, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

67.     Defendants Experian and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintain concerning Plaintiff.

**Plaintiff Discovers the Full Extent of His Mixed Credit Files With Defendants Equifax and Trans Union in November 2024**

68.     In or about early November 2024, concerned by Equifax's continued inaccurate reporting, Plaintiff requested a copy of his Equifax credit report.

69.     Soon thereafter, Plaintiff received a copy of his Equifax credit report dated November 20, 2024.

70.     Upon review, Plaintiff was frustrated to discover that Equifax was reporting the following accounts and items of information that do not belong to him, which appeared on his Equifax credit report as follows:

1.  **Accounts**

     **THE BANK OF MISSOURI**
     Partial Account #: ending in 8630
     Account Type: Revolving
     Responsibility: Individual
     Date Opened: 2/17/2022
     Balance: $1,769
     Amount Past Due: $672

2.  **Regular Inquiries:**

     a.  Synchrony Financial
         Requested On: 07/30/2024

     b.  Santander Consumer USA
         Requested On: 09/26/2023

     c.  Flagship Credit Acceptance
         Requested On: 09/25/2023

     d.  Consumer Portfolio Servi
         Requested On: 09/25/2023

     e.  GM Financial
         Requested On: 09/25/2023

      f.   Capital One Auto Finance
           Requested On: 09/25/2023

      g.   Ally Financial
           Requested On: 09/25/2023

      h.   Feldman Chevrolet Of via 700CRFeldman Chevrolet O
           Requested On: 09/16/2023

      i.   Wells Fargo Card Serv
           Requested On: 04/23/2023

**3.  Personal Information**

      a.  **Addresses Reported:**
          325 S Michigan Ave Unit 2257
          Howell, MI 48844-5056

          517 Eckschtay St
          Novi, MI 48374-1103

71.     None of the above-referenced credit accounts, regular inquiries, or addresses belong to Plaintiff. In fact, they belong to Plaintiff's twin brother, Tyler Sanders.

72.     Plaintiff did not apply for credit on any of the nine (9) above-referenced occasions, nor did Equifax have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Equifax, or any of the Credit Bureau Defendants for that matter, to provide such reports and the transactions did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Equifax's furnishing of Plaintiff's credit reports in response to these nine (9) inquiries was without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

73.     In or about early November 2024, concerned by Trans Union's continued inaccurate reporting, Plaintiff requested a copy of his Trans Union credit report.

74.     Soon thereafter, Plaintiff received a copy of his Trans Union credit report dated

November 20, 2024.

75.     Upon review, Plaintiff was frustrated to discover that Trans Union was reporting the following accounts and items of information that do not belong to him, which appeared on his Trans Union credit report as follows:

**1. Accounts**

**ALLY FINANCIAL**
Partial Account #: 67392351****
Account Type: Automobile
Responsibility: Joint Account
Date Opened: 7/3/015
High Balance: $16,323
Balance: $0

**CAPITAL ONE**
Partial Account #: 517805968746****
Account Type: Credit card
Responsibility: Individual
Date Opened: 10/20/2019
Balance: $3,521

**CONTINENTAL FINANCE COMPANY**
Partial Account #: 516648250153****
Account Type: Credit Card
Responsibility: Individual
Date Opened: 02/17/2022
Balance: $1,769
High Balance: $1,769

**GENISYS CREDIT UNION**
Partial Account #: 2165982****
Account Type: Automobile
Responsibility: Individual
Date Opened: 09/27/2023
Balance: $36,335

**21ST MORTGAGE CORP**
Partial Account #: 5634**

Account Type: Manufactured Housing
Responsibility: Individual
Date Opened: 10/21/2022
Balance: $55,583

**CITIZENSONE**
Partial Account #: 605830101162****
Account Type: Line of Credit
Responsibility: Individual
Date Opened: 04/27/2022
Balance: $0

**FREESTAR FINANCIAL CU**
Partial Account #: 31219700****
Account Type: Installment Account
Responsibility: Individual
Date Opened: 12/07/2021
Balance: $0
High Balance: High balance of $3,030 from 05/2022 to 12/2022

**SYNCB/PPC**
Partial Account #: 604419103542****
Account Type: Credit card
Responsibility: Individual
Date Opened: 08/29/2021
Balance: $0
High Balance: High balance of $249 from 05/2022 to 05/2022; $249 from 08/2022 to 08/2022

**SYNCB/WALMART**
Partial Account #: 603220368284****
Account Type: Charge Account
Responsibility: Individual
Date Opened: 05/26/2014
Balance: $0
High Balance: $546

**WELLS FARGO CARD SERV**
Partial Account #: 577442191730****
Account Type: Revolving Account

Responsibility: Individual
Date Opened: 04/23/2023
Balance: $1,400
High Balance: High balance of $2,126 from 05/2023 to 11/2024

**2. Regular Inquiries:**

j.  Synchrony Financial
    Requested On: 07/30/2024

k.  Santander Consumer USA
    Requested On: 09/26/2023

l.  Flagship Credit Acceptance
    Requested On: 09/25/2023

m.  Consumer Portfolio Servi
    Requested On: 09/25/2023

n.  GM Financial
    Requested On: 09/25/2023

o.  Capital One Auto Finance
    Requested On: 09/25/2023

p.  Ally Financial
    Requested On: 09/25/2023

q.  Feldman Chevrolet Of via 700CRFeldman Chevrolet O
    Requested On: 09/16/2023

r.  Wells Fargo Card Serv
    Requested On: 04/23/2023

**3. Personal Information**

b.  **Names Reported:**
    Larry T Sanders III

    **Also Known As:**
    Larry Tyler Sanders
    Tyler Sanders

17

Larrt T. Sanders

c.  **Addresses Reported:**
325 S Michigan Ave Unit 2257
Howell, MI 48844-5056

517 Eckschtay St
Novi, MI 48374-1103

Unit 2257
Howell, MI 48844

d.  **Phone Numbers:**
734-878-1997

517-375-0750

517-294-3556

488-897-8978

517-264-3556

517-376-9630

76.     None of the ten (10) above-referenced credit accounts, regular inquiries, and personal information belongs to Plaintiff. In fact, such information belongs to Plaintiff's twin brother, Tyler Sanders.

77.     Plaintiff did not apply for credit on any of the nine (9) above-referenced occasions, nor did Trans Union have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Trans Union, or any of the Credit Bureau Defendants for that matter, to provide such reports and the transactions did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Trans Union's furnishing of Plaintiff's credit reports in response to these nine (9)

18

inquiries was without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

**Plaintiff is Unable to Obtain a Copy of His Experian Credit Report in November 2024**

78.     In or about late November 2024, Plaintiff attempted to obtain a copy of his Experian credit report online through Annual Credit Report's website. Plaintiff entered all of his personal identification information accurately and submitted his request.

79.     However, at this time, on or about November 20, 2024, Experian failed to provide Plaintiff with a copy of his credit file stating, "Sorry, we were unable to verify your identity."

80.     Plaintiff was stressed, anxious, and frustrated at the fact that Experian would not provide him with a copy of his credit report.

81.     While Plaintiff didn't know it then, but he does know now, as of November 20, 2024, Experian only had one combined credit file for both he and his twin brother, Larry Tyler Sanders, but the combined credit file was anchored with Tyler Sanders's Social Security number as the primary SSN on the combined credit file. Thus, this is why Experian sent Plaintiff the error message and was unable to verify his identity on November 20, 2024: the only credit file and report that Experian had for Plaintiff was really his twin brother's credit file mixed with Plaintiff's personal identification information and credit accounts.

**Plaintiff's Credit Application for a Line of Credit is Denied by Affirm in November 2024 Due to Defendant Experian's Inaccurate Credit Reporting**

82.     In or about late-November 2024, Plaintiff sought to purchase Detroit Lions tickets online as an early Christmas gift for his twin brother. At checkout, and in need of additional funds to enable him to make the football ticket purchase, he sought a line of credit with Affirm, which was essentially a buy now, pay later type of cash advance.

83.     On or about November 28, 2024, Plaintiff submitted a credit application with Affirm.

84.     As part of Plaintiff's credit application, he submitted all of his personal identification information and authorized Affirm to access his credit report(s).

85.     At the time of Plaintiff's November 28, 2024, credit application with Affirm, Defendant Experian published a credit report regarding Plaintiff to Affirm that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Tyler Sanders.

86.     Affirm denied Plaintiff's credit application as a direct result of the inaccurate information contained within his Experian credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

87.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

**Plaintiff Discovers the Full Extent of His Mixed Credit File With Defendant Experian in December 2024**

88.     In or about early December 2024, concerned by Experian's continued inaccurate reporting, Plaintiff again tried requesting a copy of his Experian credit report.

89.     Soon thereafter, Plaintiff received a copy of his Experian credit report dated December 3, 2024.

90.     Upon review, Plaintiff was frustrated to discover that Experian was reporting the following accounts and items of information that do not belong to him, which appeared on his Experian credit report as follows:

1.  **Accounts**

    **AFFIRM INC**
    Partial Account #: C9N0
    Account Type: Unsecured

Responsibility: Individual
Date Opened: Dec 2023
Recent Balance: $249 as of Nov 2024

**AFFIRM INC**
Partial Account #: COS
Account Type: Unsecured
Responsibility: Individual
Date Opened: Dec 2023
Recent Balance: $151 as of Nov 2024

**AFFIRM INC**
Partial Account #: HWW6
Account Type: Unsecured
Responsibility: Individual
Date Opened: Dec 2023
Recent Balance: $50 as of Nov 2024

**AFFIRM INC**
Partial Account #: L94E
Account Type: Unsecured
Responsibility: Individual
Date Opened: Jan 2024
Recent Balance: $233 as of Nov 2024

**AFFIRM INC**
Partial Account #: RN32
Account Type: Unsecured
Responsibility: Individual
Date Opened: Jan 2024
Recent Balance: $175 as of Nov 2024

**ALLY FINANCIAL**
Partial Account #: 67392351
Account Type: Auto Loan
Responsibility: Joint with LARRY W SANDERS
Date Opened: Jul 2015
Credit limit or original amount: $16,323
Recent balance: Not reported

**CAPITAL ONE**
Partial Account #: 517805968746
Account Type: Credit card
Responsibility: Individual
Date Opened: Oct 2019
Credit limit or original amount: $3,500
Recent balance: $3,521 as of Nov 2024

**GENISYS CREDIT UNION**
Partial Account #: 2165982
Account Type: Auto Loan
Responsibility: Individual
Date Opened: Sep 2023
Credit limit or original amount: $39,139
Recent balance: $36,335 as of Oct 2024

**21ST MORTGAGE CORP**
Partial Account #: 56
Account Type: Mobile Home
Responsibility: Individual
Date Opened: Oct 2022
Credit limit or original amount: $55,592
Recent balance: $55,583 as of Oct 2024

**AFFIRM INC**
Partial Account #: O5EA
Account Type: Unsecured
Responsibility: Individual
Date Opened: Jun 2022
Credit limit or original amount: $127

**CITIZENS BANK NA**
Partial Account #: 605830101162
Account Type: Line of Credit
Responsibility: Individual
Date Opened: Apr 2022
Credit limit or original amount: $2,500

**FREESTAR FINANCIAL CU**
Partial Account #: 31219700

Account Type: Unsecured
Responsibility: Individual
Date Opened: Dec 2021
Credit limit or original amount: $3,030

**SYNCB/PPC**
Partial Account #: 604419103542
Account Type: Credit card
Responsibility: Individual
Date Opened: Aug 2021
Credit limit or original amount: $600

**SYNCB/WALMART**
Partial Account #: 603220368284
Account Type: Charge Card
Responsibility: Individual
Date Opened: May 2014
Credit limit or original amount: $230

**WFBNA CARD**
Partial Account #: 577442191730
Account Type: Charge Card
Responsibility: Individual
Date Opened: Apr 2023
Credit limit or original amount: $6,600
Recent Balance: $1,360 as of Dec 2024

2. **Inquiries:**

a. Financial Plus Credit Union
   Inquiry Date: Sep 27, 2023

b. Michigan United Credit U
   Inquiry Date: Sep 27, 2023

c. Genisys Credit Union
   Inquiry Date: Sep 26, 2023

d. Lake Trust Credit Union
   Inquiry Date: Sep 26, 2023

e.  Ally Financial
    Inquiry Date: Sep 25, 2023

f.  Cap One Auto Fin Via Dealer
    Inquiry Date: Sep 25, 2023

g.  Consumer Portfolio Services
    Inquiry Date: Sep 25, 2023

h.  Exeter Finance LLC/WCG
    Inquiry Date: Sep 25, 2023

i.  Global Lending Services
    Inquiry Date: Sep 25, 2023

j.  Nowcom/Westlake Financial
    Inquiry Date: Sep 25, 2023

k.  Genisys Credit Union
    Inquiry Date: Sep 7, 2023

3.  **Personal Information**

    a.  **Names Reported:**
        Larry T Sanders
        Name ID #5247

        Larry Tyler Sanders
        Name ID #1804

        Larry T Sanders
        Name ID #4420

        Larry Sanders 2
        Name ID #21869

        Tyler Sanders
        Name ID #21611

        Larry T Sanders
        Name ID #14490

    b. **Addresses Reported:**
       325 S Michigan Ave Unit 2257
       Howell, MI 48844-5056

       517 Eckschtay St
       Novi, MI 48374-1103

    c. **Social Security Number Variations:**
       XXX-XX-8508

    d. **Telephone Numbers:**
       734-878-1997

       517-375-0750

    e. **Former Or Current Employers**
       AZD Associates Architec Bloomfield, MI 48302

91.     None of the fifteen (15) above-referenced credit accounts, inquiries, or personal information belongs to Plaintiff. In fact, they belong to Plaintiff's twin brother, Tyler Sanders.

92.     Plaintiff did not apply for credit on any of the eleven (11) above-referenced occasions, nor did Experian have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Experian, or any of the Credit Bureau Defendants for that matter, to provide such reports and the transactions did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Experian's furnishing of Plaintiff's credit reports in response to these eleven (11) inquiries was without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

**Plaintiff's Application for Auto Insurance with Progressive Insurance is Adversely Impacted in February and March 2025 Due to Defendant Equifax's Inaccurate Credit Reporting**

93.     In or about early February 2025, Plaintiff, needing to renew his auto insurance and in hopes of obtaining the lowest and most affordable insurance rate, began shopping around for

the most affordable auto insurance policy.

94.     On or about February 18, 2025, Plaintiff submitted an application with Progressive Insurance for auto insurance coverage.

95.     As part of Plaintiff's insurance application, he submitted all of his personal identification information and authorized Progressive Insurance to access his credit report(s).

96.     At the time of Plaintiff's February 18, 2025, application with Progressive Insurance, Defendant Equifax published a credit report regarding Plaintiff to Progressive Insurance that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Tyler Sanders.

97.     While his application was ultimately accepted by Progressive Insurance, Plaintiff's auto insurance premium was adversely impacted, costing him more money annually, as a direct result of the inaccurate information contained within his Equifax credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

98.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

**Plaintiff Disputes with the Credit Bureau Defendants in February 2025**

99.     On or about February 17, 2025, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed

information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

100.    Plaintiff's written disputes specifically included his full legal name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

101.    Along with his February 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card, a copy of his November 2024 Equifax and Trans Union credit reports, and a copy of his December 2024 Experian credit report.

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

102.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

103.    The credit bureaus, including Defendants, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency- created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

104.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

105.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

106.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

107.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

108.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

109.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

110.     The data furnishers then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

111.     Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's February 2025 Disputes**

112.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's February 2025 disputes.

113.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed

by Plaintiff in February 2025, in violation of 15 U.S.C. § 1681i.

114.    Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in February 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff's Credit Application for a Business Credit Card is Denied by American Express in March 2025 Due to Defendants' Inaccurate Credit Reporting**

115.    In or about the end of January 2025, Plaintiff started a new job, after being hired by Phoenix Environmental for a full-time employment position.

116.    In or about late March 2025, Phoenix Environmental's Accountant Shauna Halberstadt, requested Plaintiff's personal identification information in order to submit a credit application on his behalf with American Express for a company credit card. This business credit card was to be provided by the company in Plaintiff's name to service technicians specifically for the purchase of materials and stock items necessary to perform their duties while in the field.

117.    As part of Plaintiff's credit application, he submitted all of his personal identification information to Ms. Halberstadt and authorized American Express to access his credit reports.

118.    At the time of Plaintiff's March 2025 credit application with American Express, through his employer, one of more of Defendants Equifax, Experian, and/or Trans Union published a credit report regarding Plaintiff to American Express that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Tyler Sanders.

119.    American Express denied Plaintiff's credit application as a direct result of the inaccurate information contained within one or more of his Equifax, Experian, and/or Trans Union credit reports, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

120.     Additionally, and following the submission of Plaintiff's credit application through Phoenix Environmental, American Express notified Phoenix Environmental that there was an issue with the verification of Plaintiff's Social Security number, through one or more of the Credit Bureau Defendants. Consequently, American Express was unable to provide Phoenix Environmental with an activated company credit card for Plaintiff. This significantly inconvenienced Plaintiff and hindered his ability to successfully complete his work in the field and resulted in out-of-pocket loss.

121.     One or more of Defendants Equifax, Experian, and/or Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintain concerning Plaintiff.

**Plaintiff's Second Round of Disputes with the Credit Bureau Defendants in April 2025**

122.     On or about April 10 and 11, 2025, growing even more frustrated, stressed, and anxious about his mixed credit file, inability to obtain credit, and the Credit Bureau Defendants' failure to correct the issue back in February, Plaintiff mailed a second round of written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

123.     Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able

to properly identify him and locate his credit file(s).

124.    Along with his April 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Trans Union credit reports, and a copy of his December 2024 Experian credit report.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's April 2025 Disputes**

125.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's April 2025 disputes.

126.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in April 2025, in violation of 15 U.S.C. § 1681i.

127.    Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in April 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff's Third Round of Disputes with the Credit Bureau Defendants in June 2025**

128.    On or about June 9, 2025, growing increasingly frustrated, stressed, and anxious about his mixed credit file, inability to obtain credit, and the Credit Bureau Defendants' failure to correct the issue back in February or April, Plaintiff mailed a third round of written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed

information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

129.    Again, Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

130.    Along with his June 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Trans Union credit reports, and a copy of his December 2024 Experian credit report.

**Defendant Equifax Fails to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's June 2025 Dispute**

131.    Defendant Equifax failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's June 2025 dispute.

132.    Defendants Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in June 2025, in violation of 15 U.S.C. § 1681i.

133.    Defendant Equifax failed to provide Plaintiff with a copy of his credit report in June 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Defendants Experian and Trans Union's Responses to and Failure to Conduct a Reasonable Reinvestigation of Plaintiff's June 2025 Disputes**

134.    On or about July 11, 2025, Plaintiff received dispute results from Trans Union at his current address.

135.    Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Trans Union failed to remove all of the inaccurate personal and credit information contained in his Trans

Union credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother.

136.    The only item of information disputed by Plaintiff that Trans Union allegedly reinvestigated was the Continental Finance Company tradeline. However, following Trans Union's alleged reinvestigation, it concluded that the Continental Finance Company tradeline belongs to Plaintiff, verified it as accurate as reported, and made no changes to the account or its reporting.

137.    Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in June 2025, in violation of 15 U.S.C. § 1681i.

138.    On or about July 25, 2025, Plaintiff received dispute results from Experian at his current address.

139.    Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Experian failed to remove all of the inaccurate personal and credit information contained in his Experian credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother.

140.    The only items of information disputed by Plaintiff that Experian allegedly reinvestigated were some of the personal information and the Affirm Inc. (L94E….) and Genisys Credit Union (2165982L….) tradelines. However, following Experian's alleged reinvestigations, it concluded that the Affirm Inc. (L94E….) and Genisys Credit Union (2165982L….) tradelines belong to Plaintiff, verified both as accurate as reported, and the Affirm Inc. tradeline remained unchanged and the Genisys Credit Union tradeline was merely updated.

141.    Experian failed to conduct a reasonable reinvestigation, or any reinvestigation

whatsoever, of all the personal and credit information disputed by Plaintiff in June 2025, in violation of 15 U.S.C. § 1681i.

142.    Defendants Equifax and Trans Union failed to provide Plaintiff with a copy of his credit reports in July 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

143.    To date, Plaintiff's credit reports with all three of the Credit Bureau Defendants contain inaccurate information and remain mixed/combined with his twin brother's credit reports and personal and credit account information.

144.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; being offered insurance rates and premium under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy related to having his personal and credit account information published to third party creditors who he did not actually apply for credit with; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

145.    At all times pertinent hereto, the Credit Bureau Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Credit Bureau

Defendants herein.

146.     At all times pertinent hereto, the conduct of the Credit Bureau Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

147.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-146 as if fully stated herein.

148.     Defendants Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of the credit reports and credit files they published and maintain concerning Plaintiff.

149.     As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; being offered insurance rates and premium under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy related to having his personal and credit account information published to third party creditors who he did not actually apply for credit with; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into

his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

150.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

151.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

152.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-146 as if fully stated herein.

153.    Defendants violated 15 U.S.C.§ 1681i by failing to delete inaccurate information in Plaintiff's credit file(s) after they received notice of such inaccuracies; by failing to conduct a reasonable reinvestigation of disputed personal information, credit accounts, and hard inquiries within the 30-day time frame outlined in the FCRA; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file(s) and reports.

154.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; being offered insurance rates and premium under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of

time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy related to having his personal and credit account information published to third party creditors who he did not actually apply for credit with; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

155.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

156.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C.§ 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681b(a)
### Furnishing a Credit Report Without a Permissible Purpose
### (Third Claim for Relief Against Defendants Equifax, Experian, and Trans Union)

157.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-146 as if fully stated herein.

158.    This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

159.    Plaintiff is a "consumer" as defined by the FCRA.

160.    Defendants Equifax, Experian, and Trans Union are consumer reporting agencies that furnish consumer reports as defined and contemplated by the FCRA.

161.    The FCRA prohibits any consumer reporting agencies from furnishing a consumer

report unless they have a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

162.     On multiple occasions in the two years preceding the filing of Plaintiff's Complaint, Defendants Equifax, Experian, and Trans Union each furnished Plaintiff's credit reports to various creditors without a permissible purpose in response to an applications of credit initiated by another consumer, Larry Tyler Sanders, which did not involve Plaintiff and which Defendants Equifax, Experian, and Trans Union therefore had no reason to believe that the various creditors intended to use Plaintiff's credit information in connection with a credit transaction involving another consumer, in violation of 15 U.S.C. § 1681b(a).

163.     As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; being offered insurance rates and premium under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy related to having his personal and credit account information published to third party creditors who he did not actually apply for credit with; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

164.     Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent,

entitling Plaintiff to recover under 15 U.S.C. § 1681o.

165.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681g**
**Failure to Provide Plaintiff with his Credit File**
**(Fourth Claim Against Defendants Equifax, Experian, and Trans Union)**

166.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-146 as if fully stated herein.

167.    The FCRA mandates that:

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request;

(2) The sources of the information;

(3)(A) Identification of each person;

(4) The dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, included in the file at the time of the disclosure.

(5) A record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

(6) If the consumer requests the credit file and not the credit score, a statement that the consumer may request and obtain a credit score.

15 U.S.C. § 1681g.

168.    Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff with his credit files and reports on multiple occasions, despite having received several requests for the same

along with documents proving his identity and current address.

169.   As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; being offered insurance rates and premium under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy related to having his personal and credit account information published to third party creditors who he did not actually apply for credit with; lack of information that he was otherwise entitled to received under federal statute; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

170.   Defendants' conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

171.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)  Determining that each Defendant negligently and/or willfully violated the FCRA as alleged herein;

b)  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)  Awarding Plaintiff reasonable attorneys' fees and costs from each Defendant as provided by the FCRA; and

d)  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

172.    Plaintiff demands a trial by jury.


Dated: September 4, 2025                                By: */s/ Adam S. Alexander*
                                                        Adam S. Alexander (P53584)
                                                        **ALEXANDER LAW FIRM**
                                                        Attorney for Plaintiff
                                                        17200 W. Ten Mile, Ste. 200
                                                        Southfield, MI 48075
                                                        Tel: (248) 246-6353
                                                        Fax: (248) 746-3793
                                                        Email: adalesq@gmail.com

                                                        Hans W. Lodge, MN Bar No. 0397012*
                                                        Bryan L. Plaster, MN Bar No. 0402792*
                                                        **BERGER MONTAGUE PC**
                                                        1229 Tyler Street NE, Suite 205
                                                        Minneapolis, MN 55413
                                                        Telephone: (612) 607-7794
                                                        Fax: (612) 584-4470
                                                        Email: hlodge@bergermontague.com
                                                                bplaster@bergermontague.com
                                                        *Pro hac vice application forthcoming*

                                                        *ATTORNEYS FOR PLAINTIFF*